FITZPATRICK, C.J.,
dissenting.
I respectfully dissent from the majority opinion. While I agree with the majority that the factual scenario presented in the instant case does not meet the traditional technical definitions of “consanguinity” and “affinity,” it is a distinction without a difference. Juror Cook’s brother-in-law was the uncle of two of the Commonwealth’s witnesses and the great-uncle of all five victims. This relationship, in my opinion, triggers the public confidence analysis recently enunciated by the Supreme Court in Cantrell v. Crews, 259 Va. 47, 51, 523
*467 S.E.2d 502, 504 (2000), Medici v. Commonwealth, 260 Va. 223, 226-27, 532 S.E.2d 28, 30-31 (2000), and Barrett v. Commonwealth, 262 Va. 823, 826-27, 553 S.E.2d 731, 733 (2001).
Public confidence in the integrity of the process is at stake. It cannot be promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties to the litigation.... This is true even though, as the record shows, the juror states that the circumstances of her [relationship] would have no “bearing” on her judgment as a juror and that she could “be totally fair to both sides.”
Cantrell, 259 Va. at 51, 523 S.E.2d at 504. See also Medici (reversed seating of a juror whose husband had been murdered and the accused was represented by the Office of the Public Defender, Medici’s counsel’s employer); Barrett (reversed seating of a prospective juror whose brother was a police officer expected to testify).
While “a juror’s family relationship to a police-officer witness does not require dismissal per se of the juror if the trial court is satisfied that the juror can stand indifferent in the cause, ... [failure to strike the juror for cause] makes it unlikely that the public would have confidence in the judicial process.” Barrett, 262 Va. at 826, 553 S.E.2d at 733.
Recently, in Patterson v. Commonwealth, 39 Va.App. 658, 576 S.E.2d 222 (2003), we again addressed the importance of analyzing on a case-by-case basis the importance of public perception and confidence in an impartial venire. “In a series of opinions decided over the last several years, the Supreme Court of Virginia has clearly found that inherent in appellate review of impartiality is a determination of whether ‘the public would have confidence in the integrity of the process’ if the prospective juror remained.” Id. at 667, 576 S.E.2d at 227.
The facts of this case clearly dictate that the seating of Juror Cook, who was related, albeit by marriage rather than blood, to all five child victims and two additional Commonwealth’s witnesses, was reversible error. Like the jurors in Cantrell, Medici, and Barrett, Juror Cook indicated and the trial court found that she would not be affected by her *468 relationship with the witnesses. However, our inquiry does not end there. We must address the objective impact upon the public as a whole. What could undermine confidence in an impartial judicial system more readily than a juror who is a relative of both the victims and the Commonwealth’s witnesses? On these facts, I would reverse the convictions and remand for a new trial, if the Commonwealth be so advised.
For these reasons, I respectfully dissent.